FILED
AUG 19 2014
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| DENISE C. MCCREARY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GOVERNOR OF THE ) <br> COMMONWEALTH OF VIRGINIA, ) <br> *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 3:12CV484–HEH |

## MEMORANDUM OPINION
(Granting Motion for Summary Judgment)

Denise McCreary, a federal inmate proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983.[1] McCreary alleges that during her incarceration at the Northern Neck Regional Jail ("NNRJ") Defendants[2] subjected her to

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The remaining defendants are: Ted Hull, Superintendent of the NNRJ; Captain Darryl Turner, Chief of Security at the NNRJ; Nurse Carolyn Neale, Supervisor of the Medical Department at the NNRJ; Dr. William Reese; and, Captain W. Hickey, Director of Intake, Receiving, and Transportation and Senior Internal Affairs Investigator at the NNRJ. The Court employs the spelling of Defendants Hull's and Neale's names provided in the Motion for Summary Judgment. By Memorandum Order entered April 26, 2013, the Court dismissed the Complaint against the Governor of the Commonwealth of Virginia, the Director of the Virginia Department of Corrections, the United States Marshal for the Eastern District of Virginia, and Members of the Northern Neck Regional Jail Board. (ECF No. 14.) By Memorandum Opinion and Order

cruel and unusual punishment and violated her due process rights through use of a restraint chair, and subsequently denied her adequate medical care. The matter is before the Court on the Motion for Summary Judgment filed by Hull, Turner, Neale, Reese, and Hickey ("Defendants"). Defendants provided McCreary with the appropriate *Roseboro*[3] notice for their Motion for Summary Judgment. (ECF No. 27.) McCreary has responded. (ECF No. 49.) The matter is ripe for disposition. For the reasons stated below, the Court will grant Defendants' Motion for Summary Judgment.

## I. SUMMARY OF CLAIMS

McCreary's claims stem from the use of a restraint chair to confine her after she attempted to commit suicide while in a booking cell and subsequently became combative with NNRJ staff. McCreary's claims against Defendants Hull, Turner, Neale, Dr. Reese, and Hickey are best summarized as follows:[4]

> Claim One    Defendants Hull, Turner, Neale, Reese, and Hickey violated McCreary's Eighth Amendment[5] rights when they "acquiesced or

---

entered March 27, 2014, the Court dismissed the Complaint against Defendants Sergeant T. Russell, Captain Lynn Sudduth, Superintendent Jeffrey W. Frazier, and Nurse Payne due to McCreary's failure to timely effect service. (ECF Nos. 42–43.) By Memorandum Order entered May 23, 2014, the Court dismissed the Complaint against the three Unknown Defendants and Nurse Jane Doe for lack of timely service. (ECF No. 48.)

[3] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[4] In her Complaint, McCreary raised several Eighth Amendment claims of cruel and unusual punishment against Sergeant Russell for "improper use of the restraint chair and his related taunting and humiliation of me" (Compl. 11), and against Sergeant Russell, Nurse Payne, and Nurse Jane Doe for depriving her of a bathroom break (*id.* at 12), and failing to check her wrists at regular intervals despite her complaints of discomfort (*id.*). As previously explained, the Court dismissed the action against Sergeant Russell, Nurse Payne, and Nurse Jane Doe.

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

2

                directly participated in [Sergeant] Russell's unlawful and sadistic use of the restraint chair[.]" (Compl. 11.)[6]

Claim Two    Defendants Hull, Turner, Neale, Reese, and Hickey violated McCreary's due process[7] rights "because they knew or should have known Russell's propensity to violence but retained and promoted him." (*Id.* at 12.)

Claim Three    Defendants Reese and Neale denied McCreary adequate medical care following her confinement in the restraint chair. (*Id.*)[8]

Claim Four    Defendants Hull, Hickey, and Turner failed to reasonably investigate the use of the restraint chair or protect McCreary from retaliation in violation of due process.

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will

---

[6] The Court employs the pagination assigned to McCreary's submissions by the CM/ECF docketing system.

[7] While McCreary cites both the Fifth and Fourteenth Amendment rights to due process, because McCreary names state actors, her action is properly brought pursuant to the Fourteenth Amendment. *See Winfield v. Bass*, 106 F.3d 525, 530 n.2 (4th Cir. 1997). The Fourteenth Amendment provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[8] McCreary brings her claim of denial of adequate medical care pursuant to the Eighth and Fourteenth Amendments. The Fourteenth Amendment applies to the denial of medical care for pretrial detainees while the Eighth Amendment applies to convicted inmates. McCreary alleges that the use of the restraint chair occurred the night after her conviction, thus, the Eighth Amendment applies to her claim, although the standard under either the Eighth or Fourteenth Amendment is the same. *See Hill v. Nicodemus*, 979 F.2d 987, 990–92 (4th Cir. 1992).

bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "'*scintilla* of evidence'" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). Nor can a nonmoving party "'create a genuine dispute of fact through mere speculation.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.3d 213, 214 (4th Cir. 1985)). Accordingly, "[t]he nonmovant can show that a dispute is genuine only if it provides sufficient evidence so that a 'reasonable jury could return a verdict for the nonmoving party.'" *Wiggins v. DaVita Tidewater LLC*, 451 F. Supp. 2d 789, 796 (E.D. Va. 2006) (quoting *Anderson*, 477 U.S. at 248).

In support of their Motion for Summary Judgment, Defendants Hull, Turner, Neale, Reese, and Hickey submitted their respective affidavits (Mem. Supp. Mot. Summ. J. Ex. A ("Hull Aff.," ECF No. 28–1), *id.* Ex. C ("Hickey Aff.," ECF No. 28–3), *id.* Ex. E ("Turner Aff.," ECF No. 28–5), *id.* Ex. F ("Neale Aff.," ECF No. 28–6), *id.* Ex. H

4

("Reese Aff.," ECF No. 28–8)), records pertaining to McCreary's attempt to hang herself and use of the restraint chair (*id.* Ex. B, ECF No. 28–2), the NNRJ Use of Restraints policy (*id.* Ex. D, ECF No. 28–4), and copies of McCreary's pertinent medical records (*id.* Ex. G (ECF No. 28–7)).[9]

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. McCreary filed a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment that failed to comply with Rule 56(B) of the Local Civil Rules for the United States District Court for the Eastern District of Virginia ("Local Rule 56(B)"). (ECF Nos. 41, 44.) Accordingly, by Memorandum Order entered May 22, 2014, the Court warned McCreary that she must file an affidavit as required by Federal Rule of Civil Procedure 56(c)(4) ("Rule 56") and a brief that complies with Local Rule 56(B). (ECF No. 47, at 1–2.) The Court also instructed McCreary that it would not consider McCreary's Memoranda of Law in Opposition and her sworn Complaint as admissible evidence. (ECF No. 47, at 2.)[10] McCreary has responded with an affidavit (ECF No. 49), that is comprised almost entirely of allegations, legal conclusions, and matters upon

---

[9] The Court employs the pagination assigned to Exhibits B and G by the CM/ECF docketing system.

[10] In her Complaint, McCreary swore: "I . . . hereby verify that the matters alleged therein as true, except as matters alleged on information and belief, and, as to those, I believe them to be true." (Compl. 13.) Such a statement fails to transform the allegations in the Complaint into admissible evidence. *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2–3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief as "'mere pleading allegations'" (quoting *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2011))). McCreary's prior Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment also failed to comply with Local Rule 56(B).

5

which she has no personal knowledge, and fails to comply with Rule 56. McCreary also attached an unsworn document entitled "Argument." (ECF No. 49, at 5–17.) McCreary's "Argument" section fails to constitute admissible evidence because she failed to swear to the contents of this document under penalty of perjury. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

No need exists to catalog the entirety of inadmissible evidence previously submitted by McCreary because she fails to cite the Court to any evidence, such as her Complaint, that she wishes the Court to consider in opposition to the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."). McCreary's failure to submit admissible evidence permits the Court to rely solely on the submissions of Defendants in deciding the Motion for Summary Judgment.[11]

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of McCreary.

---

[11] In her unsworn "Argument" filed with her affidavit, McCreary cites to exhibits produced by the Defendants in support of their Motion for Summary Judgment. The Court includes this evidence in its analysis to the extent the Court can discern to which document McCreary cites.

6

### III. UNDISPUTED FACTS

#### A. Facts Pertaining to the Use of the Restraint Chair

On June 23, 2010, McCreary was incarcerated in the NNRJ. (Hull Aff. ¶ 5.) While in a booking cell, McCreary attempted to commit suicide by fashioning torn pieces of her skirt into a rope and tying the rope around the bunk and her neck. (Mem. Supp. Mot. Summ. J. Ex. B, at 3, 7.) An inmate noticed McCreary might be attempting to hurt herself. (*Id.* at 7.) Officer Viars responded and found McCreary attempting to choke herself. (*Id.*) Officer Viars notified Officer Frederick, who called for assistance, and Officers Newsome, Stephan, Garthright, Luebke, Sergeant Russell, and two nurses responded. (*Id.* at 3, 7.) As the officers and nurses tried to remove the rope from her neck, McCreary became very combative (*id.* at 3–7) and was "struggling, yelling, and swinging at anyone who came close to her." (*Id.* at 16.) McCreary bit Officer Luebke in the struggle. (*Id.* at 2.) After the rope was removed (*id.* at 7), McCreary "continued to swing and kick at the officers and yell." (*Id.* at 16.) After handcuffing McCreary, the officers placed her in the restraint chair for her safety. (*Id.* at 2–4, 6–7.)

McCreary was placed in the restraint chair at 8:05 p.m. and removed from the chair at 11:50 p.m. and Sergeant Russell checked on McCreary at intervals of fifteen minutes per the NNRJ Restraint Policy.[12] (Mem. Supp. Mot. Summ. J. Ex. B, at 1.)

---

[12] The NNRJ Use of Restraints Policy authorizes the use of restraining devices "to assist Jail staff in controlling violent or unmanageable inmates in situations where there is the possibility of injury to themselves or others." (Mem. Supp. Mot. Summ. J. Ex. D ("NNRJ Restraints Policy") § IV.) Restraint chairs are authorized by the policy and "utilize a combination of handcuffs, leg irons and restraining straps, in a specifically designed contoured chair, to provide effective containment of an inmate exhibiting violent and/or uncontrollable behavior, and when applied, provides minimal potential for injury to the inmate." (*Id.* § V.4.) "Persons in restraints shall be

Nurse Tomi Phipps checked on McCreary between every half an hour to an hour "to make sure she was OK and ask if she needed anything, to which [McCreary] . . . always replied NO!" (*Id.* at 16.) After the officers removed McCreary from the chair, she was placed in a gown and on a fifteen minute watch schedule. (*Id.* at 2.)

Superintendent Hull, Captain Hickey, Captain Turner, Nurse Neale and Dr. Reese were not present at the NNRJ on the night of June 23, 2010 and had no personal involvement with McCreary's confinement in the restraint chair. (Hull Aff. ¶ 5; Hickey Aff. ¶ 3; Turner Aff. ¶ 3; *see* Neale Aff. ¶ 3; Reese Aff. ¶ 6.)

### B. Facts Relating to McCreary's Medical Care

The following day, Nurse Neale performed a medical assessment of McCreary. (Neale Aff. ¶ 3.) Nurse Neale noted that McCreary suffered from depression, and at some time, had been prescribed the psychological medication Cymbalta. (Mem. Supp. Mot. Summ. J. Ex. G, at 2.) Nurse Neale noted that McCreary was not taking any medications for psychological problems at the time of her admission. (*Id.* at 3.) Nurse Neale also physically examined McCreary in response to her complaint of "pain in her shoulder and upper part of her arm," (*id.* at 4), and "noted that there was no redness, swelling or bruises on plaintiff's neck area, and while [McCreary] complained of pain in her shoulders and upper part of her arms, [Neale] noted that there was no redness, swelling or injury." (Neale Aff. ¶ 3; *see* Mem. Supp. Mot. Summ. J. Ex. B, at 4.) Nurse

---

monitored every fifteen (15) minutes by correctional personnel" (*id.* § VI.3.b), must be considered for removal from the seat at least hourly, and the observations must be logged on the appropriate form. (*Id.* § VI.4.h.) An "inmate will not be released from restraints until it is believed that there is no longer a threat to self or others and can be reasonably controlled by staff." (Id. § VI.4.i.)

Neale "note[d] that [McCreary's] hands were mildly swollen, but were warm to the touch, an appropriate color, and had a strong pulse." (Neale Aff. ¶ 3; *see* Mem. Supp. Mot. Summ. J. Ex. B, at 4.) Nurse Neale "referred [McCreary] to Dr. Reese on his next visit, June 29, 2010, and to the mental health counselor . . . ." (Neale Aff. ¶ 3; *see* Mem. Supp. Mot. Summ. J. Ex. B, at 4.) Neale avers that she "had no other direct contact with [McCreary]." (Neale Aff. ¶ 3.) As the medical supervisor, Neale scheduled McCreary to be seen by medical staff every time she submitted a medical form. (*Id.* ¶ 4.)

Dr. Reese "visit[ed] NNRJ one morning each week as a consulting physician to see inmates on the sick call list and to make recommendations for their healthcare." (Reese Aff. ¶ 5.) On June 29, 2010, Dr. Reese examined McCreary, who complained of pain in her hand. (*Id.* ¶ 6.) McCreary "had a positive compression test, which indicates CTS, or carpal tunnel syndrome." (*Id.*) Dr. Reese prescribed Motrin for pain and requested a follow up appointment in two weeks. (*Id.*; Mem. Supp. Mot. Summ. J. Ex. G, at 13.) Dr. Reese saw McCreary again on July 20, 2010, and continued the Motrin prescription at McCreary's request. (Reese Aff. ¶ 7.) Dr. Reese ordered no follow up. (Mem. Supp. Mot. Summ. J. Ex. G., at 11.) Dr. Reese saw McCreary again on September 28, 2010. (Reese Aff. ¶ 8.) McCreary complained of anxiety and asked for medication. (*Id.*) Dr. Reese prescribed McCreary 20 mg of Paxil per day for anxiety and 25 mg of Elavil to take at night to help her sleep. (*Id.*) Dr. Reese avers that carpal tunnel syndrome "is not caused by wearing handcuffs, and is a surgically treatable condition." (*Id.* ¶ 9.)

9

### C. Facts Related to McCreary's Grievances and the Investigation

Captain Turner received an Inmate Grievance from McCreary on July 10, 2010. (Turner Aff. ¶ 4.) McCreary provided her version of the events on June 23, 2010 "to document this incident and have [the grievance] placed in [her] record." (Mem. Supp. Mot. J. Ex. B, at 9.) McCreary complained of hand pain and numbness in her fingers and requested an X-ray. (*Id.* at 9.) Captain Turner responded that McCreary had received medical care from two nurses and the jail physician following the incident. (Turner Aff. ¶ 5; Mem. Supp. Mot. Summ. J. Ex. B, at 9.) Captain Turner provided her with a copy of the grievance and placed a copy in her record. (*Id.*) Captain Turner avers that he has no authority to order X-rays. (*Id.*) Captain Turner explains that he directly supervises Sergeant Russell, but took no action with regard to McCreary's confinement to the restraint chair because he "was informed that Capt. Hickey was performing an internal affairs investigation related to the incident on June 23, 2010 [and] . . . was further informed that there appeared to be no breach of NNRJ's policy." (*Id.* ¶¶ 6–7.) Captain Turner had no further personal involvement with McCreary. (*Id.* ¶ 8.)

Captain Hickey performed an investigation of the incident on June 23, 2010. (Hickey Aff. ¶ 5.) Captain Hickey reviewed McCreary's inmate file pertaining to the incident, and noted that McCreary was in the chair for three hours and forty-five minutes and a nurse checked her every half an hour to hour and McCreary always responded that she did not need anything. (*Id.*) On July 22, 2010, Captain Hickey interviewed McCreary and McCreary "informed [him] that she tried to kill herself and the officers

responded according to the book. [McCreary] told [Captain Hickey] that she did try to bite one of the officers and she was sorry for both incidents." (*Id.* ¶ 6.)

On July 29, 2010, McCreary filed a grievance alleging that when Sergeant Russell "came to the unit with ice," he saw McCreary in line "and he asked [her] 'what [she] wanted?' [She] told him 'ice please.' At that time Sgt Russell said 'Didn't I tell you the other day I will give you nothing and I meant it.'" (Mem. Supp. Mot. Summ. J. Ex. B, at 11.) In the grievance section labeled "Relief Requested," McCreary asked to speak with Captain Hickey. (*Id.*) On August 3, 2010, Captain Hickey met with McCreary and McCreary marked on the grievance that she was satisfied with the response. (*Id.*)

With regard to the use of the restraint chair, Captain Hickey interviewed Sergeant Russell and Officer K. Stephens on August 4, 2010. (Hickey Aff. ¶ 7.) Captain Hickey "concluded that, based on [his] investigation, it did not appear that there had been a breach in NNRJ's policy." (*Id.* ¶ 8 (spelling corrected).) Captain Hickey had no other personal involvement with McCreary. (*Id.* ¶ 9.)

Defendant Hull avers that Dr. Reese and Nurse Neale had no control or supervisory authority over Sergeant Russell, nor did they have the ability to retain or promote him. (Hull Aff. ¶ 7.) Dr. Reese swears that he "is not responsible for any custodial or administrative functions at NNRJ." (Reese Aff. ¶ 4.)

### IV. ANALYSIS

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "'affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights.'" *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir.

1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Furthermore, "[t]he doctrine of *respondeat superior* has no application" under § 1983. *Id.* (citing *Vinnedge*, 550 F.2d at 928). McCreary must demonstrate that each defendant had "personal knowledge of and involvement" in the alleged constitutional deprivation to establish liability under § 1983. *Id.* at 850.

### A. Eighth Amendment Claims

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

#### 1. Cruel and Unusual Punishment (Claim One)

McCreary alleges that Defendants Hull, Turner, Neale, Reese, and Hickey violated her Eighth Amendment rights when they "acquiesced or directly participated in [Sergeant] Russell's unlawful and sadistic use of the restraint chair[.]" (Compl. 11.) Defendants Hull, Turner, Neale, Reese, and Hickey all aver that they were not present at

the NNRJ on June 23, 2010 and had no personal involvement in McCreary's placement in the restraint chair. (Hull Aff. ¶ 5; Hickey Aff. ¶ 3; Turner Aff. ¶ 3; *see* Neale Aff. ¶ 3; Reese Aff. ¶ 6.) McCreary fails to direct the Court to any evidence refuting these Defendants' sworn statements or demonstrating that they personally participated in any deprivation of her Eighth Amendment rights alleged in Claim One. *See Wright*, 766 F.2d at 850. Claim One lacks merit and will be dismissed.

### 2. Denial of Adequate Medical Care (Claim Three)

In order to prove an actionable claim of denial of medical care, McCreary must demonstrate that Defendants acted with deliberate indifference to her serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his or her person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837; *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question subjectively recognized a substantial risk of harm" and "that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

In Claim Three, McCreary alleges that Nurse Neale and Dr. Reese denied her adequate medical care after she was confined in the restraint chair. Specifically, McCreary contends that Nurse Neale and Dr. Reese violated her Eighth Amendment rights when they provided "incompetent and inadequate healthcare by failing to give

14

[her] depression medication and to follow up in the damage to her shoulder, arms, and wrist caused by improper use of the restraint chair . . . ." (Compl. 12.) The record fails to support McCreary's allegations. Instead, the record demonstrates that Nurse Neale performed a full assessment of McCreary's medical history the day after her admission to the NNRJ, asked McCreary about her currently prescribed medications, and noted that McCreary had a history of taking psychotic medications. In response to McCreary's complaints of pain in her shoulders and upper arms, Nurse Neale examined McCreary and noted no redness, swelling, or injury. Nurse Neale noted mild swelling in McCreary's wrists, but observed no discoloration and observed that McCreary had a strong pulse. Nurse Neale also scheduled McCreary to see Dr. Reese on his next visit and referred McCreary to the mental health counselor.

Dr. Reese examined McCreary in response to her complaint of pain in her hands and diagnosed McCreary with carpal tunnel syndrome. Dr. Reese prescribed McCreary Motrin for pain. During a follow up visit, Dr. Reese continued McCreary's Motrin prescription per her request. On September 28, 2010, McCreary complained of anxiety and asked Dr. Reese for medication. Dr. Reese prescribed Paxil for anxiety and Elavil to help her sleep. Dr. Reese avers that, in his medical judgment, carpal tunnel syndrome is not caused by wearing handcuffs.

McCreary fails to adduce evidence from which a reasonable trier of fact could conclude that Dr. Reese's or Nurse Neale's actions amounted to deliberate indifference. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) ("To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the

15

treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986))). Nurse Neale examined McCreary the day following her confinement to the restraint chair and referred her both to the doctor on his next visit and to the mental health counselor. Dr. Reese examined McCreary three times and treated her each time for her complaints. To the extent McCreary disagrees with the course of treatment she received, she states no Eighth Amendment claim. *Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6). McCreary fails to demonstrate any exceptional circumstances that would necessitate judicial review of Nurse Neale and Dr. Reese's clinical judgment. Accordingly, Claim Three will be dismissed.

## V. DUE PROCESS

### A. Retention and Promotion of Sergeant Russell

In Claim Two, McCreary alleges that Defendants Hull, Hickey, Turner, Neale, and Reese "violated [her] due process rights . . . because they knew or should have known of Russell's propensity to violence but retained and promoted him." (Compl 12.) First, Defendant Hull avers that Dr. Reese and Nurse Neale had no control or supervisory authority over Sergeant Russell and had no ability to retain or promote him. (Hull Aff. ¶ 7.) McCreary fails to refute this sworn testimony. Accordingly, Claim Two will be dismissed against Dr. Reese and Nurse Neale.

Second, McCreary fails to demonstrate that Defendants Hull, Hickey, and Turner knew or should have known of Sergeant Russell's propensity to violence.[13] *See Whaley v. Erickson*, 339 F. App'x 619, 622 (7th Cir. 2009) (granting summary judgment for defendants where inmate "presented no evidence that any of the defendants knew about [the aggressor's] purported propensity for violence"). This warrants dismissal of Claim Two against Hull, Hickey, and Turner.

### B. Failure to Investigate and Retaliation

In Claim Four, McCreary alleges that Defendants Hull, Hickey, and Turner violated her right to due process by failing to "reasonably investigate [McCreary's] allegations of Russell's physical abusive official misconduct which violated [her] due process rights . . . and protect [her] from further retaliation [and] intimidation . . . once [she] complained and filed grievances." (Compl. 12.) McCreary alleges that after filing grievances complaining about her June 23, 2010 confinement in the restraint chair, Sergeant Russell "used words to taunt me and attempted to engage me in an altercation." (*Id.* at 9.) McCreary again fails to explain how Defendants Hull, Hickey, and Turner violated her right to due process.

#### 1. Inadequate Investigation

McCreary provides no factual support for her assertion that Defendants Hull, Hickey, and Turner violated her due process rights through an inadequate investigation of

---

[13] To support this claim, McCreary relies solely on a 2006 civil action in which Russell was named as a defendant. *See Harris v. Frazier*, No. 3:07–CV–701, 2009 WL 890161 (E.D. Va. Mar. 30, 2009). McCreary fails to establish that a prior lawsuit filed against a prison official should place other prison officials on notice of an official's purported "propensity to violence." Moreover, in *Harris*, the district court dismissed the complaint against Sergeant Russell because no Eighth Amendment violation occurred. *See id.* at *9–13.

her grievance describing Sergeant Russell's purportedly improper behavior during McCreary's confinement in the restraint chair. McCreary's complaint that Defendants Hull, Hickey, and Turner conducted an unreasonable investigation into her grievances fails to survive summary judgment. "[T]here is no constitutional right to participate in grievance proceedings." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Moreover, a prison administrator's response to a grievance or appeal fails to create liability under § 1983 for a prior incident described in the grievance. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Brooks v. Beard*, 167 F. App'x 923, 925 (3rd Cir. 2006) (responding inappropriately to an inmate's later-filed grievances fails to establish the personal involvement of those officials in the underlying deprivation). McCreary has not produced any evidence that demonstrates that Defendants Hull, Hickey, and Turner violated her rights to due process.

### 2. Failure to Protect from Retaliation

Finally, McCreary alleges that Defendants Hull, Hickey, and Turner failed to protect her from Sergeant Russell's purported retaliation against McCreary for McCreary's filing of grievances naming Sergeant Russell. To withstand summary judgment, "plaintiffs who claim their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal . . . ." *Adams*, 40 F.3d at 74. Instead, a plaintiff must put forth evidence "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Id.* at 75. McCreary fails to do so. Because McCreary enjoys no constitutional right to participate in grievance proceedings, her act of pursuing grievances

18

about NNRJ·staff was not the exercise of a constitutional right. *Id.* (citing *Flick*, 932 F.2d at 729).

McCreary also fails to demonstrate that the purported retaliatory acts— Sergeant Russell's verbal abuse and "taunt[ing]"—violated a constitutional right. *Id.* "A claim of retaliation that fails to implicate any constitutional right lacks even an arguable basis in law . . . ." *Id.* (citation omitted) (internal quotation marks omitted). Contrary to McCreary's assertions, verbal harassment or idle threats to an inmate, even if the threats cause an inmate fear or emotional anxiety, do not constitute a constitutional violation. *See Moody v. Grove*, No. 89–6650, 1989 WL 107004, at *1 (4th Cir. Sept. 19, 1989) ("Verbal abuse alone does not violate a constitutional right." (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979))). Thus, McCreary fails to demonstrate any adverse impact or actual injury from Sergeant Russell's alleged retaliation, much less from Defendant Hickey's purported failure to protect her from Sergeant Russell's retaliatory acts. Based on the record, no reasonable juror could find that the alleged retaliatory acts "[were] taken in response to the exercise of a constitutionally protected right or that the act itself violated such right." *Adams*, 40 F.3d at 75. Accordingly, Claim Four will be dismissed.

## VI. CONCLUSION

The Motion for Summary Judgment (ECF No. 26) will be granted. McCreary's claims and the action will be dismissed with prejudice.

An appropriate Order shall accompany this Memorandum Opinion.

Date: August 19, 2014
Richmond, Virginia

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE